Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

dropbox

# UNITED STATES DISTRICT COURT
## for the
## Western District of Louisiana
## Shreveport Division

RECEIVED
DEC 15 2020
TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY_____

Monica L. Hendricks
*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

-v-

PRIDE Industries, Inc.
*Defendant(s)*
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

Case No. 20-cv-1641
(to be filled in by the Clerk's Office)

Jury Trial: (check one) ☒ Yes ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Monica L. Hendricks
Street Address: 308 1st Street Pinehill
City and County: Springhill, Webster
State and Zip Code: Louisiana 71075
Telephone Number: (318)-268-4655
E-mail Address: mhmailbox2000@yahoo.com

B. **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**Defendant No. 1**
Name: PRIDE Industries, Inc.
Job or Title (if known): Employer/Federal Contractor
Street Address: 10030 Foothills Blvd.
City and County: Roseville, Placer
State and Zip Code: California 95747
Telephone Number: (800)-550-6005
E-mail Address (if known):

**Defendant No. 2**
Name: Todd Grundy
Job or Title (if known): Floor Supervisor, PRIDE
Street Address: location address: 1265 Twining Drive
City and County: Barksdale AFB, Bossier
State and Zip Code: LA 71110
Telephone Number: (318)-584-7148
E-mail Address (if known):

**Defendant No. 3**
Name: Dashaun Jones
Job or Title (if known): Supervisor, PRIDE
Street Address: 1265 Twining Drive
City and County: Barksdale AFB, Bossier
State and Zip Code: LA 71110
Telephone Number: (318)-584-7148
E-mail Address (if known):

**Defendant No. 4**
Name: Michael Sanders
Job or Title (if known): Program Manager, PRIDE
Street Address: 1265 Twining Drive
City and County: Barksdale AFB, Bossier
State and Zip Code: LA 71110
Telephone Number: (318)-584-7148
E-mail Address (if known):

C. **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

Name: Barksdale Air Force Base Commissary
Street Address: 1265 Twining Drive
City and County: Barksdale AFB, Bossier
State and Zip Code: Louisiana
Telephone Number: (318)-584-7148

II. **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to (check all that apply):

[✓] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)

[ ] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)

[✓] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)

[ ] Other federal law (specify the federal law):

[ ] Relevant state law (specify, if known):

[ ] Relevant city or county law (specify, if known):

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes (check all that apply):

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☐ Failure to promote me.
- ☒ Failure to accommodate my disability.
- ☒ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☒ Other acts (specify): Failure to stop harassment once made aware

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) From April 17, 2019 - November 2019. There was non-stop harassment until I filed my first complaint; harassment resumed about three months after (never accommodations were granted).

C. I believe that defendant(s) (check one):
- ☐ is/are still committing these acts against me.
- ☒ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my (check all that apply and explain):
- ☐ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☐ age (year of birth) _____ (only when asserting a claim of age discrimination.)
- ☒ disability or perceived disability (specify disability) Obsessive-Compulsive disorder, extreme anxiety, menorraghia

E. The facts of my case are as follows. Attach additional pages if needed.

Hendricks, Monica L.
Employment Discrimination Complaint against PRIDE Industries, Inc.

My name is Monica Hendricks, and these facts are in regard to the employment discrimination suit that I am filing against PRIDE Industries, a federal contractor at Barksdale Airforce Base in Bossier City.

**E. The facts of my case are as follows:**

1.) When I got to the commissary, from Day 1, I was targeted. I was singled out and made fun of by the job coach, Chris Gorder, who refused to train me and was hostile because I wasn't part of the hearing-impaired community, then I started being harassed and discriminated against by the evening supervisors, Todd Grundy and DaShaun Jones, who were mad that I had reported their unprofessional behavior to PRIDE BAFB's program manager, Michael Sanders. Although on several occasions Mr. Sanders said that he would talk to Todd and DaShaun and to Chris, when Chris was still there, in the end, I had to contact the OFCCP and hire a lawyer to get better working conditions.

My first complaint to the OFCCP focused on two things: 1.) the supervisors' bullying, and 2.) PRIDE's failure to get a locker for me in the women's dressing area, which I needed for a well-documented female medical issue. While the issue of the locker was settled by the time the OFCCP sent its letter to PRIDE's corporate office concluding its investigation, the supervisors' hostility and harassment returned as soon as the supervisors felt that they were no longer under scrutiny. This led to my second complaint to the OFCCP. The resolution ended in failure again after the workplace harassment returned at force, and the OFCCP-mediated work accommodations I received from PRIDE were abandoned after the first few months or just not honored from the beginning.

2.) **Specific ways that I was discriminated against or harassed:**

a. From my first evening at work, PRIDE's job coach wouldn't train me. He walked me down the aisle I was supposed to learn to stock, told me he'd be right back, then never returned.

b. The job coach told me not to talk to my hearing-impaired co-workers, isolating me due to his prejudice against hearing-abled people, which I didn't know was a commonly-known issue.

c. The job coach didn't order my work shoes even though the program manager told him twice.

d. After I was given a form to request a women's locker in the bathroom, I was refused a locker even though I have a serious, sometime fatal women's uterine bleeding disorder, but other PRIDE female employees without female issues had them. I had to hire a lawyer, Ms. Pamela Jones, to win the right to a bathroom locker.

e. Todd Grundy, my immediate supervisor, told me that I had to start parking in a zone farther from the store, but the rest of my co-workers were still allowed to park right in the front.

f. I have OCD and used a designated buggy and ladder combo at work, but the floor supervisor, Todd Grundy, would pointedly try to force me to use equipment that wasn't mine, saying it

Hendricks, Monica L.
Employment Discrimination Complaint against PRIDE Industries, Inc.

didn't matter, that I shouldn't have to have my own buggy and ladder.

g. Even though I am very left-hand oriented and was told that I could work down either end of my aisle, Todd would put me on the wrong end to make me work from the right side down and get mad when I was allowed to start on the left end.

h. As a new store worker, after I finished my aisle, the rule was that I had to find Todd so he could approve it and tell me what my next job was. Usually, when I finished and would go look for him in the back, he would ask why I wasn't out on the floor, like he didn't know that I couldn't stay on my aisle and go find him at the same time. Yet, when I just waited for him to come to my aisle, he would ask me why I hadn't gone to find him and let him know I was through. He would do a lot of things like that, make arbitrary rules and decisions, then act like I had done something wrong whenever possible.

i. Todd would give me an assignment to stock a display but, the first time that I did one, when I turned around to go write down the number of each product needed, he said stop. Instead, he wanted me to just go grab about four or five boxes of each, put them in my buggy, then see what would go up. It made no sense, but I did it. He then came up later, asking me why I was going back and forth so much, saying that I was "wasting steps". I was going back and forth so much because he didn't let me write down what I needed of each product, which he said was a waste of time. I did not, and still don't, understand what logic he was using, but I do know that if I had gone to the display first to write down how much I needed of each product, I wouldn't have had to go to the aisle but once, period. Then, on some evening later, I saw that another worker, Carlos, writing down what he needed for a display. I swear to God, I pointed at Carlos, and Todd said that I could save a lot of time by doing that. That was the first time I wondered if Todd had a disability. When I was trying to describe my interactions with him in a private meeting, I mentioned it. He sometimes made me feel that I was being gaslighted.

j. The aisle that I worked on, 4B, the cereal aisle, provided the boxes for everyone's damaged items, broken bottles, dented cans, opened products, everything. From the evening I started working there, I was told to go down to the end of the cereal aisle to throw away anything that couldn't be sold. Because I originally worked on the toilet paper aisle, I rarely needed the boxes but appreciated them being there when I did. When I was moved to the cereal aisle, I became responsible for putting the boxes out for everyone. A day or two after I started working on it, I was walking down to put the boxes out, Todd told me not to leave my aisle. I told him I was just going to put the boxes out, and he told me to just leave them, that he would take them to the end of the aisle when he came back my way. He never came for the boxes and people started asking where the boxes were. I told them I had them, but Todd wouldn't let me bring them down. People started putting damaged items on the naked cart itself, which meant that someone was going to have to clean it off. Finally, a co-worker just walked up to me on the aisle and put the boxes out so people could use them. When I was going to put the boxes out my next evening at work, Todd asked me didn't he tell me to leave the boxes on the floor and that he would come get it. I told DaShaun, because people started thinking it was my fault, that I just wasn't doing my job. DaShaun told me to go ahead and put the boxes out, and, when I asked him why Todd told me not to do it, he said he didn't know. The result was that what Todd did made co-workers mad at me, had them

Hendricks, Monica L.
Employment Discrimination Complaint against PRIDE Industries, Inc.

coming up asking me why I wasn't putting them out. That was one of the things that I pointed out to Mr. Sanders and Ms. Apodaca when they wanted examples of how Todd singled me out or treated me differently. Todd never did say why he told me not to set out the boxes, and he never, ever came to my aisle for them. In the end, DaShaun said I could go ahead and put them out because people would mess up the floor otherwise.

11. The supervisors never followed my new accommodations in regard to having a written work list for me, nor did they tell me how many boxes I had when I started my shift.

12. After I was granted the set routine of doing my aisle then working overwrites and/or partials (verbally approved by Ms. Apodaca and Mr. Sanders during mediation), after about five or six weeks, Todd told me that I wasn't doing that anymore and that I had to work two aisles, something he tried to throw in, but Mr. Sanders told me it wasn't true. Todd did, however, stop the routine. Since it wasn't spelled out in writing, DaShaun said that my routine was having no routine, and he and Todd started making me work later and later at night, despite my accommodations.

13. At least once a month, I was unable to sit on the floor. That's due to the female medical issue that I have. Todd knew it, but, on several occasions, when he saw someone helping me by doing my lower shelves, Todd would ask me if my back was hurting again. He never moved past my going to the ER for sciatica after he made me pick up and stock cases of Gatorade. Every time he asked, I would tell him no and why, but he kept doing it. It was a workplace microaggression that I had to deal with that every month. It's childish, but it was also very irritating, and I didn't know what to do to make him stop.

14. I felt most bullied and harassed by Todd when I stocked my aisle. I worked as fast as I could and was at 100% production, but he would still come up to me and ask me what was wrong, if I was feeling okay, or why was I just now at a certain section of the aisle I was working. When I complained, he would lie and say he had said nothing or that he hadn't even been down my aisle. He would also put other people in the middle and at the end of my aisle. When they would finish and leave the aisle, Todd would come up and ask why my aisle wasn't finished because everyone else was through. He did it the first evening Mr. Whitaker came to the office to ask about my second complaint. I went to the back to complain, Todd said he didn't say anything to me, and I told Mr. Whitaker and Mr. Sanders about it. When I came back to work two days later, however, they said they hadn't even looked at the video.

Incidentally, the manager, Mr. Michael Sanders used the video system to witness the job coach accost me on the work floor, but the he and HR officers refused to do the same when 1.) I reported the fight amongst PRIDE supervisors on the commissary floor, or 2.) When I reported to HR officer Ross Whitaker (during an evening Whitaker was at the office) that Todd Grundy had approached and harassed me, after Grundy denied approaching me at all.

Had PRIDE Industries really cared about the truth and the safety and quality of all of their workers' environment, not just mine, both cases could have easily been solved, and my honesty proven, by management just watching security video.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)

IV. **Exhaustion of Federal Administrative Remedies**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)* ___I filed twice with the OFCCP, first in October 2018, and March 2019, after receiving no improved working conditions.___

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)* _____.

(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.
☐ less than 60 days have elapsed.

V. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Hendricks, Monica L.
Employment Discrimination Complaint against PRIDE Industries, Inc.

**V. Relief**

I have suffered from anxiety and depression throughout most of my life. When necessary, I have had to take time out, away from school or work, to stay home and get myself mentally and physically healthy again. For almost two years, from April 2016-January 2018, I was at home, not working, due to personal illness, family issues, and death. I used the time away from work to begin regular iron infusions for my anemia, to get off psychiatric medicines that I no longer needed, and to lose weight. I slimmed down from the 215 lbs. that I weighed while I was depressed, to my regular weight of 155 lbs., size 8. I had a positive attitude, and I was happy that I was finally able to leave the house again.

When I was hired by PRIDE, I was ready, mentally and physically, to go back out into the workforce. Because of the environment created by the PRIDE supervisors, during the time I worked at the commissary, I lost almost all of the progress that I made the two years I was at home. My anxiety disorders are out of control, I'm back on all of my medications, and I weigh 220 lbs. The stress from my job even made it difficult for me to focus at school, where I started taking entry-level computer courses during the day while I worked at the commissary at night. In one year, I went from being an honor roll student to having the worst academic semesters I have ever experienced. That has had a really unhealthy effect on my self-esteem. If nowhere else, school has always been a place where I knew I could succeed, and as a person with disabilities that is important. Psychologically, I am much worse than I was before I became employed by PRIDE, which angers me the most. Hopefully, it's just temporary, but I truly feel like working at PRIDE ruined my life. As a company whose mission is supposed to support people with disabilities, not hurt them, PRIDE should not be able to get away with how I was treated.

In regard to financial compensation for PRIDE Industries' failure to honor my workplace accommodations and end the harassment and hostile work environment created by my supervisors, I feel I should receive compensation for loss of wages, plus heavy punitive damages. I think that asking a jury for an award for $300,000 is fair and just. First, I worked there for a year and a half, was targeted from my first day. I was discriminated against because I was not part of the hearing-impaired community, harassed by supervisors for speaking up or speaking out when they spoke or behaved inappropriately, retaliated against by PRIDE HR for contacting the Office of Federal Contract Compliance Programs when HR didn't respond to my reports or neglected to investigate video evidence available due to the commissary's 24-hour security system, and I was repeatedly denied a bathroom locker that was medically necessary for me. I had to borrow money to hire an employment attorney, yet every woman I knew who worked for PRIDE had gotten one just by asking.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/15/2020

Signature of Plaintiff: *Monica L. Hendrick*
Printed Name of Plaintiff: Monica L. Hendricks

### B. For Attorneys

Date of signing: _____

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

**U.S. Department of Labor**  Office of Federal Contract Compliance Programs
New Orleans District Office
600 South Maestri Place, Suite 606
New Orleans, LA 70130



## U.S. DEPARTMENT OF LABOR
## OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

TO: Monica L. Hendricks
    308 1st St Pinehill
    Springhill, LA 71075

FROM: U.S. Department of Labor
    Office of Federal Contract Compliance Programs
    New Orleans District Office
    600 South Maestri Place, Suite 606
    New Orleans, LA 70130

Complaint Number: I00215475

TO THE COMPLAINANT: You may file a lawsuit against the contractor under ADA in federal or state court. Your lawsuit must be filed within 90 calendar days of receipt of this notice or your right to sue will be lost. Please see the enclosed information sheet on filing lawsuits for further information.

With the issuance of this Notice of Right-to-Sue, OFCCP is terminating its processing of your complaint.

An information copy of this Notice has been sent to the below employer as named in your complaint.

    Pride Industries
    2271 Louisiana Ave, BLDG 3304
    Ft. Polk, Louisiana 71459

On behalf of the United States Department of Labor,

_Rachel M. Woods_ (signature)      September 16, 2020
District Director      Date
Rachel M. Woods
U.S. Department of Labor
Office of Federal Contract Compliance Programs
600 S. Maestri Pl., Room 606
New Orleans, LA 70130

Enclosures (2):    Information Related to Filing Suit under the ADA
                   Copy of Complaint

cc:    Travis Nicholson, Acting Director
       Hale Boggs Federal Building
       500 Poydras Street, Suite 809
       New Orleans, LA 70130